IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDUR RAHMAN KANTAMANTO, | : | |
| aka CURTIS PRICE | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO.  05-4110 |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY | : | |
| Defendant. | : | |

ORDER AND MEMORANDUM

O R D E R

**AND NOW**, this 11th day of May, 2007, upon consideration of Defendant Montgomery County's Motion for Summary Judgment Against Plaintiff (Document No. 45, filed January 12, 2007); and Plaintiff's Anser [sic] to Defendant's Motion for Summary Judgment (Document No. 47, filed March 5, 2007), for the reasons set forth in the attached Memorandum, **IT IS ORDERED**, as follows:

1. Defendant Montgomery County's Motion for Summary Judgment Against Plaintiff is **GRANTED** under Federal Rule of Civil Procedure 56.

2. **JUDGMENT IS ENTERED** in **FAVOR** of defendant, Montgomery County, and **AGAINST** plaintiff, Abdur Rahman Kantamanto, aka Curtis Price.

M E M O R A N D U M

**I.      INTRODUCTION**

This case arises out of the 2005 detention of plaintiff Abdur Rahman Kantamanto in the Montgomery County Correctional Facility, in Norristown, Pennsylvania.  Plaintiff alleges a cause of action under 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658,

690 (1978).  Specifically, plaintiff alleges (a) that he was unlawfully detained in the Montgomery County Correctional Facility on an "improper" probation violation detainer, and (b) that defendant's failure to lift the "improper" detainer "caused plaintiff's bail to be revoked" in separate criminal proceedings against him in Philadelphia.  Second Am. Compl. ¶¶ 4-6.

Presently before the Court is defendant's Motion for Summary Judgment.  For the reasons set forth below, the Motion for Summary Judgment is granted.

## II.   BACKGROUND

On February 17, 1998, plaintiff pled guilty to charges of simple assault and terroristic threats in the Court of Common Pleas of Montgomery County, Pennsylvania.  N.T. 2/17/98, at 3-4.  Pursuant to a plea agreement, plaintiff was sentenced to time served to 23 months on the charge of simple assault, and two years probation on the charge of terroristic threats, with probation to run from the date of sentencing.  Id. at 7-8.

Plaintiff was present at the Montgomery County proceedings, having been extradited from Massachusetts, where he was serving a term of incarceration.  Dep. Kantamanto, at 9-10, filed as Def.'s Mot. Summ. J. Ex. 1 (hereinafter "Dep. Kantamanto").  After sentencing, plaintiff was paroled from the bench and "returned to the custody of the authorities in Massachusetts."  N.T. 2/17/98, at 7.

### A.   The Montgomery County Bench Warrant

On May 27, 1998, approximately one month after remanding plaintiff to prison in Massachusetts, the Court of Common Pleas of Montgomery County issued a bench warrant for plaintiff's arrest.  Def.'s Mot. Summ. J. Ex. 6 at 1-2.  The Montgomery County bench warrant alleged that plaintiff violated the terms of his probation by, *inter alia*, failing "to report to the

Montgomery County Adult Probation and Parole Department on April 3, 1998, April 14, 1998, and April 24, 1998, as directed" and failing "to maintain a verifiable address as directed." Def.'s Mot. Summ. J. Ex. 6 at 1-2. Notably, plaintiff was incarcerated in Massachusetts when the Montgomery County bench warrant was issued.[1]

**B.   The Massachusetts Bench Warrant**

On April 2, 2003, plaintiff was released from prison in Massachusetts and began serving a five-year term of probation under the supervision of Massachusetts authorities. Dep. Kantamanto, at 10-11. On July 19, 2004, the Superior Court of Worcester, Massachusetts issued a bench warrant for plaintiff's arrest due to plaintiff's alleged "fail[ure] to appear [at] probation." Def.'s Mot. Summ. J. Ex. 3 at 3. Plaintiff admits that the July 19, 2004 warrant was a "facially valid warrant authorizing the apprehension and detention of Plaintiff." Def.'s Req. for Admis. ¶¶ 9-10, filed as Def.'s Mot. Summ. J. Ex. 7 (hereinafter "Def.'s Req. for Admis.").

**C.   Philadelphia Arrest**

On January 21, 2005, Plaintiff was arrested and jailed in Philadelphia on multiple charges. Def.'s Mot. Summ. J. Exs. 4-5; Def.'s Req. for Admis. ¶¶ 1-4. On "January 22nd or 23rd" 2005, bail was set in the Philadelphia proceedings. Dep. Kantamanto at 22. Plaintiff posted bond, but was advised by Philadelphia authorities that he was wanted on a bench warrant in Montgomery County. Id. at 23. It is unclear from the filings whether or not plaintiff's bail was revoked. However, it is clear that plaintiff was not released. Def.'s Mot. Summ. J. at 3

---

[1] Plaintiff does not state explicitly that he was incarcerated when the Montgomery County bench warrant was issued. The Court infers this fact from plaintiff's assertion–uncontested by defendant–that he was not released from prison in Massachusetts until April 2, 2003. Dep. Kantamanto, at 10-11; Second Am. Compl. ¶ 4.

(citing Dep. Kantamanto at 23).

**D.    Montgomery County Detention**

On January 24, 2005, plaintiff was transferred from Philadelphia to the Montgomery County Correctional Facility. Id. On February 1, 2005, the Massachusetts State Police faxed an official copy of the Massachusetts bench warrant and a rendition letter to the Montgomery County authorities. Def.'s Mot. Summ. J. Ex. 3 at 1-3; Def.'s Req. for Admis. ¶¶ 7-8. On February 7, 2005, plaintiff was charged in Montgomery County with being a fugitive from justice from Massachusetts. Id. ¶ 13. On February 28, 2005, plaintiff waived extradition to Massachusetts, pending the disposition of the "local" charges against him and was remanded to the Montgomery County Correctional Facility. Id. ¶ 14, Ex. D.

Despite the existence of the Massachusetts detainer, the Montgomery County authorities continued to pursue the Montgomery County bench warrant against plaintiff. On March 8, 2005, April 18, 2005, and May 17, 2005, plaintiff was summoned to appear before the Court of Common Pleas of Montgomery County for a Gagnon II hearing on plaintiff's alleged violation of his Montgomery County probation. Id. ¶¶ 17- 21.[2] The first two Gagnon II hearings were continued at the request of plaintiff's attorney. Id. ¶ 17-20, Exs. F-G. During plaintiff's third appearance, on May 17, 2005, the prosecution withdrew its request for a Gagnon II hearing. Id. ¶ 21, Ex. H. Plaintiff then was remanded to the custody of the Montgomery County Correctional

---

[2] A defendant is generally entitled to two separate hearings prior to revocation of parole or probation. Gagnon v. Scarpelli, 411 U.S. 778 (1973); see also Goods v. Pennsylvania Bd. of Probation and Parole, 912 A.2d 226, 236 n.11 (Pa. 2006). The purpose of the first (Gagnon I) hearing is to "ensure against detention on allegations of violation that have no foundation of probable cause." Commonwealth v. Perry, 254 Pa. Super. 48, 52 (Pa. Super. 1978). The purpose of the second (Gagnon II) hearing is to determine whether facts exist to justify revocation of parole or probation. Commonwealth v. Sims, 770 A.2d 346, 349 (Pa. Super. 2001).

Facility on the "detainer from Massachusetts." Id. ¶ 21, Ex. H.  That same day, plaintiff was transferred to the Curran-Fromhold Correctional Facility in Philadelphia to face charges arising out of his January 21, 2005, arrest in Philadelphia.  Id. ¶ 23.

Plaintiff admits that the Massachusetts bench warrant "was outstanding at the time of Plaintiff's January 21, 2005 arrest in Philadelphia."  Def.'s Req. for Admis. ¶¶ 9-11.  Plaintiff further admits that "[a]t all times from January 21, 2005 through May 17, 2005, the July 19, 2004 Massachusetts warrant . . . provided legal authorization to hold Plaintiff in custody for rendition to Massachusetts."  Id. ¶ 12.

**E.     Plaintiff's Claims**

On August 2, 2005, plaintiff filed a *pro se* Complaint in this Court.  By Order dated August 9, 2005, the Complaint was dismissed without prejudice for procedural deficiencies.  On October 28, 2005, plaintiff filed a *pro se* Amended Complaint.  On April 17, 2006, plaintiff's counsel entered an appearance.  By Order dated July 11, 2006, the Court granted plaintiff leave to file a counseled Second Amended Complaint.  Plaintiff filed a Second Amended Complaint on August 11, 2006.  Plaintiff admits that his Second Amended Complaint "was prepared by Plaintiff at the Curran-Fromhold Correctional Facility on a prison typewriter and thereafter was signed and filed by Plaintiff's counsel."  Def.'s Req. for Admis. ¶ 26.

In his Second Amended Complaint, plaintiff alleges a single Monell claim against defendant Montgomery County.  Specifically, plaintiff alleges (a) that he posted bond in Philadelphia, and would have been released, but was unlawfully detained in the Montgomery County Correctional Facility on an "improper" probation violation detainer, and (b) that defendant's failure to lift the "improper" detainer "caused plaintiff's bail to be revoked" in

separate criminal proceedings against him in Philadelphia. Second Am. Compl. ¶¶ 4-6. Plaintiff further alleges that defendant took these actions pursuant to an "illegal custom" of discriminating against "black muslim [sic] legal activist[s]." Id. ¶ 5. Plaintiff does not mention the Massachusetts bench warrant in his Second Amended Complaint.

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Courts hold that "a material fact is 'genuine,'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material" factual dispute is one which might affect the outcome of the case under governing law. Id. "[A] party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (internal citations omitted).

### IV. DISCUSSION

#### A. Legal Standard: Monell Liability

42 U.S.C. § 1983 does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. To state a claim under § 1983, a plaintiff must

6

demonstrate a violation of a federal or constitutional right by a person acting under color of state law.  See, e.g., Morse v. Lower Merion School District, 132 F.3d 902, 906-07 (3d Cir. 1997) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

Under Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), municipalities are "included among those persons to whom § 1983 applies."  To establish Monell liability, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997); see also City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).  A municipal "policy" may arise from the "decisions of [a municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Board of County Comm'rs of Bryan County, 520 U.S. at 403-04.  A municipal "custom" is a practice that has not been formally approved, but is "so widespread as to have the force of law."  Id. at 404.

To satisfy the causation requirement of Monell, a plaintiff must demonstrate that a municipality was the "moving force" behind the alleged injury.  Id.  "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Id.  Where the policy or custom at issue does not violate federal law, plaintiff must demonstrate that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  Berg, 219 F.3d at 276 (quoting Board of County Comm'rs of Bryan County, 520 U.S. at 407); see also City of Canton, 489 U.S. at 389.

7

**B.      Plaintiff Fails to Establish a Genuine Issue Under <u>Monell</u>**

Defendant moves to dismiss this action on the ground that "[p]laintiff lacks any evidence whatsoever that his allegedly unlawful incarceration was caused by a policy or custom of [defendant]," as required under <u>Monell</u>.  Mem. Law Supp. Def.'s Mot. Summ. J. at 1.  This Court agrees.

In his Second Amended Complaint, plaintiff alleges that (a) that he was unlawfully detained in the Montgomery County Correctional Facility on an "improper" probation violation detainer, and (b) that defendant's failure to lift the "improper" detainer "caused plaintiff's bail to be revoked" in separate criminal proceedings against him in Philadelphia.  Second Am. Compl. ¶¶ 4-6.  In support of his <u>Monell</u> claim, plaintiff further alleges that defendant took these actions pursuant to "illegal custom" of discriminating against "black muslim [sic] legal activist[s]."  <u>Id.</u> ¶ 5.

Plaintiff presents almost no evidence of defendant's alleged "illegal custom."  Indeed, his allegation rests entirely on an alleged statement of "Officer Martin" of the Montgomery County Correctional Facility.  Plaintiff describes this evidence, as follows:

> The sole reasonfor [sic] his improper denial of liberty to his knowlege [sic] was that he was a black muslim [sic] legal activist, as he was informed by a guard, one Martin as answered in his interrogatories.[3]  As Officer Martin did not have the authority to improperly deny his liberty, he could not maintain an action against her, but this evidence must go to the jury as to the County's policy of illegal siscrimination [sic] against black muslim [sic] activistss [sic].

---

[3] In his Answer to defendant's interrogatories plaintiff identified "Captain Martin" as a witness he would call at trial.  However, plaintiff described the relevance of Captain Martin's testimony as follows: "Captain Martin, Montgomery County Correctional [F]acility, who threatened plaintiff because she maintained the court did not do enough to Plaintiff in a case involving her daughter."  Ans. Def. Interrogatories at 3, 5, filed as Def.'s Mot. Summ. J. Ex. 8.  This proposed testimony in no way supports plaintiff's <u>Monell</u> claim.

8

Mem. Law Supp. Pl.'s Opp. Def.'s Mot. Summ. J. at 1.

Plaintiff's assertion that Officer Martin "informed" him that he was detained because "he was a black muslim [sic] legal activist" is insufficient to establish an official policy or custom under Monell.  Plaintiff presents no evidence that Officer Martin spoke pursuant to a formal municipal policy or custom; that Officer Martin has policy-making authority; or that Officer Martin was authorized to speak for defendant.  See Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006).  Nor does plaintiff present any evidence that defendant discriminated on the basis of race, religion or "legal activis[m]" in any case other than his own.  "[E]vidence of a single incident of unconstitutional activity is insufficient to impose municipal liability under Monell."  Boemer v. Patterson, 1987 WL 13741, *4 (E.D. Pa. July 14, 1987) (Scirica, J.) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1986)); see also Groman v. Township of Manalapan, 47 F.3d 628, 627 (3d Cir. 1995) (holding that a Monell claim is "unsubstantiated" where the only evidence of an official policy or custom is the incident in the case and "vague assertions about . . . other wrongdoings").

Plaintiff has not established a genuine issue of material fact as to whether his constitutional rights were violated by an official policy or custom of defendant.  Thus, the Court grants defendant's Motion for Summary Judgment under Rule 56.

## C.     Even If Plaintiff Established a Genuine Issue Under Monell, Plaintiff Was Not Unlawfully Detained

The Court further concludes that even if plaintiff had established a genuine issue of material fact as to a policy or custom under Monell, plaintiff fails to establish either (1) that he was unlawfully detained in the Montgomery County Correctional Facility, or (2) that defendant's

y
z
a

failure to lift the "improper" detainer "caused plaintiff's bail to be revoked" in criminal proceedings against him in Philadelphia. Second Am. Compl. ¶¶ 4-6.

As to his detention in the Montgomery County Correctional Facility, plaintiff admits that "[a]t all times from January 21, 2005 through May 17, 2005, the July 19, 2004 Massachusetts warrant . . . provided legal authorization to hold Plaintiff in custody for rendition to Massachusetts." Def.'s Req. for Admis. ¶ 12. As to the alleged revocation of bail in Philadelphia, plaintiff presents absolutely no evidence as to the date of the alleged revocation of bail, or the cause of the alleged revocation.

The Court grants defendant's Motion for Summary Judgment under Rule 56 for these additional reasons.

## V.   CONCLUSION

For the foregoing reasons, Defendant Montgomery County's Motion for Summary Judgment Against Plaintiff is granted under Federal Rule of Civil Procedure 56.[4]

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS, J.**

---

[4] The Court notes that by letter to the Clerk of Court dated April 23, 2007, plaintiff stated that his attorney's "telephone numbers are not in service." Letter, 4/23/07 at 1. Plaintiff further stated: "I have talked with an attorney about the above mentioned case. The attorney has expressed an interest in reviewing the documents in my civil case. I cannot afford to pay the cost for the documents. Please send me all the documents requested in my previous letter." Id. Because the Court concludes that additional documents or a new attorney will not change the outcome in this matter, the Court issues the instant opinion.

b